RACHELE R. BYRD
*pro hac vice forthcoming*
STEPHANIE AVILES
*pro hac vice forthcoming*
**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, California
Telephone: (619) 239-4599
Facsimile: (619) 234-4599
byrd@whafh.com
saviles@whafh.com

JON TOSTRUD
*pro hac vice forthcoming*
ANTHONY CARTER
*pro hac vice forthcoming*
**TOSTRUD LAW GROUP, PC**
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: 310/278-2600
Facsimile: 310/278-2640
jtostrud@tostrudlaw.com
acarter@tostrudlaw.com

*Attorneys for Plaintiff and Proposed Class*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **JOE LOPEZ** on behalf of himself and all others similarly situated,<br>Plaintiff,<br><br>v.<br><br>**AVIS RENT A CAR SYSTEM, LLC**, and **AVIS BUDGET GROUP, INC.**<br>Defendants. | Case No.<br><br>**JURY TRIAL DEMANDED** |

# CLASS ACTION COMPLAINT

Plaintiff Joe Lopez, residing at 5012 W. 116th Street, Los Angeles, California ("Plaintiff"), individually and on behalf of all similarly situated persons, alleges the

following against Avis Rent A Car System, LLC and Avis Budget Group, Inc., their principal places of business being located at 379 Interpace Parkway, Parsippany, New Jersey, 07054, (collectively, "Avis" or "Defendants") based upon personal knowledge with respect to himself and on information and belief derived from, among other things, investigation by his counsel and review of public documents as to all other matters:

## I. INTRODUCTION

1. Plaintiff brings this class action against Avis for its failure to properly secure and safeguard Plaintiff's and other similarly situated Avis customers' full names, credit card numbers and expiration dates, driver's license information, dates of birth, and phone numbers (collectively "PII" or "Private Information") from hackers.

2. Avis is a rental car service company that serves hundreds of thousands of customers nationwide.

3. On or about September 5, 2024, Avis filed official notice of a hacking incident with the Offices of the Attorney General in both Maine and California.

4. On or about September 4, 2024, Avis also sent out data breach letters ("Notice Letter") to individuals whose information was compromised as a result of the hacking incident.

5. Based on the Notice Letter, on August 5, 2024, Avis discovered that "an unauthorized third party gained access to one of our business applications."[1] In response, the company launched an investigation. The Avis investigation revealed that an unauthorized party had access to certain company files between August 3, 2024, and August 6, 2024 (the "Data Breach").

6. According to Avis's report to the Office of the Attorney General in Maine, approximately 299,006 individuals have been affected by the Data Breach.

7. Plaintiff and "Class Members" (defined below) were, and continue to be, at significant risk of identity theft and various other forms of personal, social, and financial harm. This risk will remain for their respective lifetimes.

8. The Private Information compromised in the Data Breach included highly sensitive data that is a gold mine for cybercriminals, including but not limited to, full names, credit card numbers and expiration dates, driver's license information, dates of birth, and phone numbers that Avis collected and maintained.

9. Armed with the Private Information accessed in the Data Breach, data thieves can commit a variety of crimes including, *e.g.*, opening new financial accounts in Class Members' names, obtaining driver's licenses in Class Members'

---

[1] *See* Notice Letter https://www.maine.gov/cgi-bin/agviewerad/ret?loc=1225 (last visited Nov. 4, 2024).

names but with another person's photograph, and giving false information to police during an arrest.

10. There has been no assurance offered by Avis that all personal data or copies of data have been recovered or destroyed, or that Defendants have adequately enhanced their data security practices sufficient to avoid a similar data breach in the future.

11. Therefore, Plaintiff and Class Members have suffered and are at an imminent, immediate, and continuing increased risk of suffering ascertainable losses from identity theft harm and other fraudulent misuse of their Private Information; the loss of the benefit of their bargain, out-of-pocket expenses incurred to remedy or mitigate the effects of the Data Breach; and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach.

12. Plaintiff brings this class action lawsuit to address Avis's inadequate safeguarding of Class Members' Private Information that it collected and maintained.

13. The potential for improper disclosure and theft of Plaintiff's and Class Members' Private Information was a known risk to Avis, and thus, Avis was aware that failing to take necessary steps to secure the Private Information left it vulnerable to an attack.

14. Upon information and belief, Avis and its employees failed to properly monitor and implement security practices regarding the computer network and systems that housed the Private Information. Had Avis properly monitored its networks effectively, it would have discovered the Data Breach sooner.

15. The Plaintiff's and Class Members' identities are now at risk because of Avis's negligent conduct, as the Private Information that Avis collected and maintained is now in the hands of cybercriminals and other unauthorized third parties.

16. Plaintiff seeks to remedy these harms on behalf of himself and all similarly situated individuals whose Private Information was accessed and/or compromised during the Data Breach.

17. Accordingly, Plaintiff, on behalf of himself and the Class, assert claims for negligence, negligence per se, breach of contract, breach of implied contract, unjust enrichment, violation of the California Consumer Privacy Act, CAL. CIV. CODE § 1798.100, *et seq*., and declaratory judgment.

## II. PARTIES

18. Joe Lopez is, and at all times mentioned herein was, an individual citizen of the state of California.

19. Defendant Avis Rent A Car System, LLC is a rental car service company with its principal place of business at 379 Interpace Parkway, Parsippany,

New Jersey, 07054. Avis Rent A Car System, LLC, is an affiliate subsidiary of Avis Budget Group, Inc.

20. Defendant Avis Budget Group, Inc. is the parent company of Avis Rent A Car System, LLC, with its principal place of business at 379 Interpace Parkway, Parsippany, New Jersey, 07054.

## III. JURISDICTION AND VENUE

21. The Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Upon information and belief, the number of class members is over 100, many of whom have different citizenship from Avis. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

22. This Court has jurisdiction over Avis because Avis operates in and/or is incorporated in this District.

23. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because a substantial part of the events giving rise to this action occurred in this District.

## IV. FACTUAL ALLEGATIONS

### A. Avis's Business and Collection of Plaintiff's and Class Members' Private Information

24. Founded in 1946, Avis is a premier rental car service company serving millions of customers globally each year and hundreds of thousands of customers in

the United States alone, with approximately 5,500 locations in more than 165 countries. Avis Rent A Car System, LLC, is a subsidiary of Avis Budget Group, Inc. Avis employs more than 24,500 people and generates approximately $12 billion in annual revenue.[2]

25. As a condition of receiving rental car services, and in the ordinary course of receiving service from Avis, Plaintiff and Class Members were required to provide their Private Information to Defendants.

26. Avis uses this information, *inter alia*, for marketing, advertising, and business operations.

27. In its Notice Letter, Avis states that "[w]e take the privacy and security of our customers' information seriously."[3] In its privacy policy, Avis informs its customers that "[w]e take reasonable steps designed to protect personal information from unauthorized use, access, disclosure, alteration, destruction or loss."[4] Furthermore, Avis states:

> To determine the appropriate duration of the retention of personal information, we consider the amount, nature, and sensitivity of the personal information, the potential risk of harm from unauthorized use or disclosure of personal information, and whether we can attain our objectives by other means, as well as our legal, regulatory, tax, accounting, and other applicable obligations.[5]

---

[2] *See* https://www.avisbudgetgroup.com/about-us/ (last visited Nov. 4, 2024).
[3] *See* Notice Letter.
[4] *See* https://www.avis.com/en/legal-documents/privacy-notice (last visited Nov. 4, 2024).
[5] *Id.*

28. Because of the highly sensitive and personal nature of the customers' information Avis acquires and stores, Avis, upon information and belief, promises to: keep customers' Private Information private; comply with industry standards related to data security and the maintenance of its customers' Private Information; inform its customers of its legal duties relating to data security and comply with all federal and state laws protecting customers' Private Information; only use and release customers' Private Information for reasons that relate to the services it provides; and provide adequate notice to customers if their Private Information is disclosed without authorization.

29. By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' Private Information, Avis assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' Private Information from unauthorized disclosure and exfiltration.

30. Plaintiff and Class Members relied on Avis to keep their Private Information confidential and securely maintained and to only make authorized disclosures of this information, which Defendants ultimately failed to do.

**B. The Data Breach and Avis's Inadequate Notice to Plaintiff and Class Members**

31. According to Avis's Notice, it learned of unauthorized access to its computer systems on August 5, 2024, with such unauthorized access having taken

place between August 3, 2024, and August 6, 204.

32. Through the Data Breach, the unauthorized cybercriminal(s) accessed a cache of highly sensitive Private Information, including credit card numbers and expiration dates, dates of birth, and driver's license numbers.

33. On or about September 4, 2014, Avis began to notify customers that its investigation determined that their Private Information was obtained.

34. Avis delivered Data Breach Notification Letters to Plaintiff and Class Members, alerting them that their highly sensitive Private Information had been exposed in a "data security incident."

35. The notice letter then attached some pages entitled "Attachment A" and "Attachment B – More Information about Identity Protection," which listed generic steps that victims of data security incidents can take, such as getting a copy of a credit report or notifying law enforcement about suspicious financial account activity. Other than providing one year of crediting monitoring that Plaintiff and Class Members would have to affirmatively sign up for and a call center number that victims could contact "with any questions," Avis offered no other substantive steps to help victims like Plaintiff and Class Members to protect themselves. On information and belief, Avis sent a similar generic letter to all individuals affected by the Data Breach.

36. Avis had obligations created by contract, industry standards, common law, and representations made to Plaintiff and Class Members to keep Plaintiff' and Class Members' Private Information confidential and to protect it from unauthorized access and disclosure.

37. Plaintiff and Class Members provided their Private Information to Avis with the reasonable expectation and mutual understanding that Avis would comply with its obligations to keep such information confidential and secure from unauthorized access and to provide timely notice of any security breaches.

38. Avis's data security obligations were particularly important given the substantial increase in cyberattacks in recent years.

39. Avis knew or should have known that its electronic records would be targeted by cybercriminals.

**C. <u>Avis Failed to Comply with FTC Guidelines</u>**

40. The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making. Indeed, the FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of

Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. *See, e.g.*, *FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

41. In October 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cybersecurity guidelines for businesses. The guidelines note that businesses should protect the personal customer information that they keep, properly dispose of personal information that is no longer needed, encrypt information stored on computer networks, understand their network's vulnerabilities, and implement policies to correct any security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs, monitor all incoming traffic for activity indicating someone is attempting to hack into the system, watch for large amounts of data being transmitted from the system, and have a response plan ready in the event of a breach.

42. The FTC further recommends that companies not maintain personally identifiable information ("PII") longer than is needed for authorization of a transaction, limit access to sensitive data, require complex passwords to be used on networks, use industry-tested methods for security, monitor the network for suspicious activity, and verify that third-party service providers have implemented reasonable security measures.

43. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data by treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by the FTCA. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

44. As evidenced by the Data Breach, Avis failed to properly implement basic data security practices. Avis's failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiff's and Class Members' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA.

45. Avis was at all times fully aware of its obligation to protect the Private Information of its customers yet failed to comply with such obligations. Defendants were also aware of the significant repercussions that would result from their failure to do so.

## D. Avis Failed to Comply with Industry Standards

46. As noted above, experts studying cybersecurity routinely identify businesses as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain.

47. Some industry best practices that should be implemented by businesses like Avis include but are not limited to educating all employees, strong password requirements, multilayer security including firewalls, anti-virus and anti-malware software, encryption, multi-factor authentication, backing up data, and limiting which employees can access sensitive data. As evidenced by the Data Breach, Defendants failed to follow some or all of these industry best practices.

48. Other best cybersecurity practices that are standard in the industry include: installing appropriate malware detection software; monitoring and limiting network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protecting physical security systems; and training staff on these points. As evidenced by the Data Breach, Defendants failed to follow these cybersecurity best practices.

49. Defendants failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

50. Defendants failed to comply with these accepted standards, thereby permitting the Data Breach to occur.

### E. Avis Breached its Duty to Safeguard Plaintiff's and Class Members' Private Information

51. In addition to its obligations under federal and state laws, Avis owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Avis owed a duty to Plaintiff and Class Members to provide reasonable security, including complying with industry standards and requirements, training for its staff, and ensuring that its computer systems, networks, and protocols adequately protected the Private Information of Class Members.

52. Avis breached its obligations to Plaintiff and Class Members and/or was otherwise negligent and reckless because it failed to properly maintain and safeguard its computer systems and data. Avis's unlawful conduct includes, but is not limited to, the following acts and/or omissions:

a. Failing to maintain an adequate data security system that would reduce the risk of data breaches and cyberattacks;

b. Failing to adequately protect customers' Private Information;

c. Failing to properly monitor its own data security systems for existing intrusions;

d. Failing to sufficiently train its employees regarding the proper handling of its customers' Private Information;

e. Failing to fully comply with FTC guidelines for cybersecurity in violation of the FTCA;

f. Failing to adhere to industry standards for cybersecurity as discussed above; and

g. Otherwise breaching its duties and obligations to protect Plaintiff's and Class Members' Private Information.

53. Avis negligently and unlawfully failed to safeguard Plaintiff's and Class Members' Private Information by allowing cyberthieves to access its computer network and systems which contained unsecured and unencrypted Private Information.

54. Had Avis remedied the deficiencies in its information storage and security systems, followed industry guidelines, and adopted security measures recommended by experts in the field, it could have prevented intrusion into its information storage and security systems and, ultimately, the theft of Plaintiff's and Class Members' confidential Private Information.

55. Accordingly, Plaintiff's and Class Members' lives were severely disrupted. What's more, they have been harmed as a result of the Data Breach and now face an increased risk of future harm that includes, but is not limited to, fraud

and identity theft. Plaintiff and Class Members also lost the benefit of the bargain they made with Avis.

**F. <u>Avis Should Have Known that Cybercriminals Target Private Information to Carry Out Fraud and Identity Theft</u>**

56. The FTC hosted a workshop to discuss "informational injuries," which are injuries that consumers like Plaintiff and Class Members suffer from privacy and security incidents such as data breaches or unauthorized disclosure of data.[6] Exposure of highly sensitive personal information that a consumer wishes to keep private may cause harm to the consumer, such as the ability to obtain or keep employment. Consumers' loss of trust in e-commerce also deprives them of the benefits provided by the full range of goods and services available which can negatively impact daily life.

57. Victims of a data breach are exposed to serious ramifications regardless of the nature of the data that was breached. Indeed, criminals steal information is to monetize it. They do this by selling data on the black market to identity thieves who desire to extort and harass victims or to take over victims' identities in order to engage in illegal financial transactions under the victims' names.

---

[6] *FTC Information Injury Workshop, BE and BCP Staff Perspective,* Federal Trade Commission, (October 2018), *available at* https://www.ftc.gov/system/files/documents/reports/ftc-informational-injury-workshop-be-bcp-staff-perspective/informational_injury_workshop_staff_report_-_oct_2018_0.pdf (last visited on Nov. 4, 2024).

58. Because a person's identity is akin to a puzzle, the more accurate pieces of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity or to otherwise harass or track the victim. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails. For example, a data thief can utilize the hacking technique to obtain even more information about a victim's identity, such as a person's login credentials or Social Security number, with just a name and date of birth.

59. In fact, as technology advances, computer programs may scan the Internet with a wider scope to create a mosaic of information that may be used to link compromised information to an individual in ways that were previously impossible. This is known as the "mosaic effect." Names and dates of birth, combined with contact information like telephone numbers and email addresses, are invaluable to hackers and identity thieves as it allows them to access users' other accounts.

60. Thus, even if certain information was not purportedly involved in the Data Breach, the unauthorized parties could use Plaintiff's and Class Members' Private Information to access accounts, including, but not limited to, email accounts

and financial accounts, to engage in a wide variety of fraudulent activity against Plaintiff and Class Members.

61. An example of this is the development of "Fullz" packages.

62. Cybercriminals can cross-reference two sources of the Private Information compromised in the Data Breach to marry unregulated data available elsewhere to criminally stolen data with an astonishing scope and degree of accuracy to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

63. These packages allow the stolen Private Information from the Data Breach to easily be used to link and identify it to Plaintiff's and the proposed Class's phone numbers, email addresses, and other sources and identifiers. Even if certain information such as emails, phone numbers, or credit card or financial account numbers may not be included in the Private Information stolen in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and members of the proposed Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff and other Class Members' stolen Private Information are being misused, and that such misuse is fairly traceable to the Data Breach.

64. For these reasons, the FTC recommends that identity theft victims take several time-consuming steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert on their account (and an extended fraud alert that lasts for 7 years if someone steals the victim's identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a freeze on their credit, and correcting their credit reports.[7] However, these steps do not guarantee protection from identity theft but can only mitigate identity theft's long-lasting negative impacts.

65. Identity thieves can also utilize stolen Social Security numbers for a variety of crimes, including credit card fraud, phone fraud, bank fraud, or to obtain a driver's license or official identification card in the victim's name but with the thief's picture.

66. PII is data that can be used to detect a specific individual and is a valuable property right. Considering the value of big data in corporate America and the consequences of cyber thefts (which include heavy prison sentences), its value is axiomatic. Even this risk-to-reward analysis illustrates that PII has considerable market value.

---

[7] *See IdentityTheft.gov,* Federal Trade Commission, *available at* https://www.identitytheft.gov/Steps (last visited Nov. 4, 2024).

67. The U.S. Attorney General stated in 2020 that consumers' sensitive personal information commonly stolen in data breaches "has economic value."[8] The increase in cyberattacks, and attendant risk of future attacks, was widely known and completely foreseeable to the public and to anyone in Defendants' industry.

68. The PII of consumers remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, PII can be sold at a price ranging from $40 to $200, while banking information has a price range of $50 to $200.[9] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web and that the "*fullz*" (a term criminals who steal credit card information use to refer to a complete set of information on a fraud victim) sold for $30 in 2017.[10]

69. Furthermore, even names, email addresses, and phone numbers, can have value to a hacker. Beyond things like spamming customers, or launching

---

[8] *See Attorney General William P. Barr Announces Indictment of Four Members of China's Military for Hacking into Equifax*, U.S. Dep't of Justice, Feb. 10, 2020, available at https://www.justice.gov/opa/speech/attorney-general-william-p-barr-announces-indictment-four-members-china-s-military (last visited on Nov. 4, 2024).

[9] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, *available at*: https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last visited on Nov. 4, 2024).

[10] *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, Dec. 6, 2017, *available at*: https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last visited on Nov. 4, 2024).

phishing attacks using their names and emails, hackers, *inter alia*, can combine this information with other hacked data to build a more complete picture of an individual. It is often this type of piecing together of a puzzle that allows hackers to successfully carry out phishing attacks or social engineering attacks. This is reflected in recent reports, which warn that "[e]mail addresses are extremely valuable to threat actors who use them as part of their threat campaigns to compromise accounts and send phishing emails."[11]

70. The Dark Web Price Index of 2022, published by PrivacyAffairs[12] shows how valuable just email addresses alone can be, even when not associated with a financial account:

| Email Database Dumps | Avg. Price USD (2022) |
|---|---|
| 10,000,000 USA email addresses | $120 |
| 600,000 New Zealand email addresses | $110 |
| 2,400,000 million Canada email addresses | $100 |

71. Beyond using email addresses for hacking, the sale of illegally obtained email addresses can lead to increased spam emails. If an email address is swamped with spam, that address may become cumbersome or impossible to use, making it less valuable to its owner.

[11] *See* https://www.magicspam.com/blog/dark-web-price-index-the-cost-of-email-data/ (last visited on Nov. 4, 2024).
[12] *See* https://www.privacyaffairs.com/dark-web-price-index-2022/ (last visited on Nov. 4, 2024).

72. Likewise, the value of PII is increasingly evident in our digital economy. Many companies, including Avis, collect PII for the purposes of data analytics and marketing. These companies, collect it to better target customers, and shares it with third parties for similar purposes.[13]

73. One author has noted: "Due, in part, to the use of PII in marketing decisions, commentators are conceptualizing PII as a commodity. Individual data points have concrete value, which can be traded on what is becoming a burgeoning market for PII."[14]

74. Consumers also recognize the value of their personal information and offer it in exchange for goods and services. The value of PII can be derived not only by a price at which consumers or hackers actually seek to sell it, but rather by the economic benefit consumers derive from being able to use it and control it.

75. A consumer's ability to use their PII is encumbered when their identity or credit profile is infected by misuse or fraud. For example, a consumer with false or conflicting information on their credit report may be denied credit. Also, a consumer may be unable to open an electronic account where their email address is

---

[13] *See* https://robinhood.com/us/en/support/articles/privacy-policy/ (last visited on Nov. 4, 2024).

[14] *See* John T. Soma, *Corporate Privacy Trend: The "Value" of Personally Identifiable Information ('PII') Equals the "Value" of Financial Assets,* 15 Rich. J. L. & Tech. 11, 14 (2009).

already associated with another user. In this sense, among others, the theft of PII in the Data Breach led to a diminution in value of the PII.

76. Data breaches, like that at issue here, damage consumers by interfering with their fiscal autonomy. Any past and potential future misuse of Plaintiff's PII impairs their ability to participate in the economic marketplace.

77. Notably there may be a substantial time lag between when harm occurs and when it is discovered, and also between when PII and/or personal financial information is stolen and when it is used. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:[15]

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

78. PII is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black market" for years.

---

[15] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, GAO (June 2007), *available at* https://www.gao.gov/assets/gao-07-737.pdf (last visited Nov. 4, 2024).

79. As a result, Plaintiff and Class Members are at an increased risk of fraud and identity theft for many years into the future. Thus, Plaintiff and Class Members have no choice but to vigilantly monitor their accounts for many years to come.

### G. Plaintiff's and Class Members' Damages

*Plaintiff Joe Lopez' Experience*

80. When Plaintiff Lopez first became a customer, Avis required him to provide it with substantial amounts of his Private Information.

81. On or about September 17, 2024, Plaintiff Lopez received a letter entitled "Notice of Data Breach" which told him that his Private Information had been obtained during the Data Breach. The notice letter informed him that the compromised Private Information included his name, driver's license, credit card number and expiration date, date of birth, and phone number.

82. The notice letter offered Plaintiff Lopez only one year of credit monitoring services. One year of credit monitoring is not sufficient given that Plaintiff Lopez will now experience a lifetime of increased risk of identity theft and other forms of targeted fraudulent misuse of his Private Information.

83. Plaintiff Lopez suffered actual injury in the form of time spent dealing with the Data Breach and the increased risk of fraud resulting from the Data Breach and/or monitoring his accounts for fraud.

84. Plaintiff Lopez would not have provided his Private Information to Defendants had they timely disclosed that their systems lacked adequate computer and data security practices to safeguard its customers' personal information from theft, and that those systems were subject to a data breach.

85. Plaintiff Lopez suffered actual injury in the form of having his Private Information compromised and/or stolen as a result of the Data Breach.

86. Plaintiff Lopez suffered actual injury in the form of damages to and diminution in the value of his personal and financial information – a form of intangible property that Plaintiff Lopez entrusted to Defendants for the purpose of receiving rental car services from Defendants and which was compromised in, and as a result of, the Data Breach.

87. Plaintiff Lopez suffered imminent and impending injury arising from the substantially increased risk of future fraud, identity theft, and misuse posed by his Private Information being placed in the hands of criminals.

88. Plaintiff Lopez has a continuing interest in ensuring that his Private Information, which remains in the possession of Defendants, is protected and safeguarded from future breaches.

89. As a result of the Data Breach, Plaintiff Lopez has encountered a significant uptick of spam communications, including unsolicited emails, calls, and text messages.

90. As a result of the Data Breach, Plaintiff Lopez made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to researching the Data Breach, reviewing financial accounts for any indications of actual or attempted identity theft or fraud, blocking unsolicited communications, and researching the credit monitoring offered by Defendants, as well as long-term credit monitoring options he will now need to use. Plaintiff Lopez has spent several hours dealing with the Data Breach, valuable time he otherwise would have spent on other activities.

91. Plaintiff Lopez has suffered emotional distress as a result of the release of his Private Information to cybercriminals, which Private Information he believed would be protected from unauthorized access and disclosure. These feelings include anxiety about unauthorized parties viewing, selling, and/or using his Private Information for purposes of committing cyber and other crimes against him. Plaintiff Lopez is very concerned about this increased, substantial, and continuing risk, as well as the consequences that identity theft and fraud resulting from the Data Breach will have on his life.

92. Plaintiff Lopez also suffered actual injury as a result of the Data Breach in the form of: (a) damage to and diminution in the value of his Private Information, a form of property that Defendants obtained from Plaintiff Lopez; (b) violation of

his privacy rights; and (c) present, imminent, and impending injury arising from the increased risk of identity theft, and fraud he now faces.

93. As a result of the Data Breach, Plaintiff Lopez anticipates spending considerable time and money on an ongoing basis to try to mitigate and address the many harms caused by the Data Breach.

94. In sum, Plaintiff and Class Members have been damaged by the compromise of their Private Information in the Data Breach.

95. Plaintiff and Class Members entrusted their Private Information to Defendants in order to receive Defendants' services.

96. Plaintiff's Private Information was subsequently compromised as a direct and proximate result of the Data Breach, which resulted from Defendants' inadequate data security practices.

97. As a direct and proximate result of Avis's actions and omissions, Plaintiff and Class Members have been harmed and are at an imminent, immediate, and continuing increased risk of harm, including but not limited to, having credit card accounts opened in their names, and other forms of identity theft.

98. Further, as a direct and proximate result of Avis's conduct, Plaintiff and Class Members have been forced to spend time dealing with the effects of the Data Breach.

99. Plaintiff and Class Members also face a substantial risk of being targeted in future phishing, data intrusion, and other illegal schemes through the misuse of their Private Information, since potential fraudsters will likely use such Private Information to carry out such targeted schemes against Plaintiff and Class Members.

100. The Private Information maintained by and stolen from Defendants' systems, combined with publicly available information, allows nefarious actors to assemble a detailed mosaic of Plaintiff and Class Members, which can also be used to carry out targeted fraudulent schemes against Plaintiff and Class Members.

101. Plaintiff and Class Members also lost the benefit of the bargain they made with Avis. Plaintiff and Class Members overpaid for services that were intended to be accompanied by adequate data security but, ultimately, were not. Indeed, part of the price Plaintiff and Class Members paid to Avis was intended to be used by Avis to fund adequate security of Avis's system and protect Plaintiff's and Class Members' Private Information. Thus, Plaintiff and the Class did not receive the benefit they bargained for.

102. Additionally, as a direct and proximate result of Avis's conduct, Plaintiff and Class Members have also been forced to take the time and effort to mitigate the actual and potential impact of the data breach on their everyday lives, including placing "freezes" and "alerts" with credit reporting agencies, contacting

their financial institutions, closing or modifying financial accounts, and closely reviewing and monitoring bank accounts and credit reports for unauthorized activity for years to come.

103. Plaintiff and Class Members may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

104. Additionally, Plaintiff and Class Members also suffered a loss of value of their PII when it was acquired by cyber thieves in the Data Breach. Numerous courts have recognized the appropriateness of loss-of-value damages in data breach cases. An active and robust legitimate marketplace for Private Information also exists. In 2019, the data brokering industry was worth roughly $200 billion.[16] In fact, consumers who agree to provide their web browsing history to the Nielsen Corporation can, in turn, receive up to $50 a year.[17]

105. As a result of the Data Breach, Plaintiff's and Class Members' Private Information, which has an inherent market value in both legitimate and illegal markets, has been harmed and diminished due to its acquisition by cybercriminals.

---

[16] *See* https://thequantumrecord.com/blog/data-brokers-profit-from-our-data/#:~:text=The%20business%20of%20data%20brokering,annual%20revenue%20of%20%24200%20billion. (last visited on Nov. 4, 2024).
[17] *Frequently Asked Questions,* Nielsen Computer & Mobile Panel, https://computermobilepanel.nielsen.com/ui/US/en/faqen.html (last visited Nov. 4, 2024).

This transfer of valuable information happened with no consideration paid to Plaintiff or Class Members for their property, resulting in an economic loss. Moreover, the Private Information is apparently readily available to others, and the rarity of the Private Information has been destroyed because it is no longer only held by Plaintiff and the Class Members, and because that data no longer necessarily correlates only with activities undertaken by Plaintiff and the Class Members, thereby causing additional loss of value.

106. Plaintiff and Class Members were also damaged via benefit-of-the-bargain damages. The contractual bargain entered into between Plaintiff and Avis included Avis's contractual obligation to provide adequate data security, which Avis failed to provide. Thus, Plaintiff and Class Members did not get what they bargained for.

107. Finally, Plaintiff and Class Members have suffered or will suffer actual injury as a direct and proximate result of the Data Breach in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach. These losses include, but are not limited to, the following:

a. Monitoring for and discovering fraudulent charges;

b. Canceling and reissuing credit and debit cards;

c. Addressing their inability to withdraw funds linked to compromised accounts;

d. Taking trips to banks and waiting in line to obtain funds held in limited accounts;

e. Contacting financial institutions and closing or modifying financial accounts;

f. Resetting automatic billing and payment instructions from compromised credit and debit cards to new ones;

g. Closely reviewing and monitoring bank accounts and credit reports for additional unauthorized activity for years to come.

108. Moreover, Plaintiff and Class Members have an interest in ensuring that their Private Information, which is believed to still be in the possession of Avis, is protected from future additional breaches by the implementation of more adequate data security measures and safeguards, including but not limited to, ensuring that the storage of data or documents containing personal and financial information is not accessible online, that access to such data is password-protected, and that such data is properly encrypted.

109. As a direct and proximate result of Avis's actions and inactions, Plaintiff and Class Members have suffered a loss of privacy and have suffered

cognizable harm, including an imminent and substantial future risk of harm, in the forms set forth above.

## V. CLASS ACTION ALLEGATIONS

110. Plaintiff brings this action individually and on behalf of all other persons similarly situated, pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(1), 23(b)(2), and 23(b)(3).

111. Specifically, Plaintiff proposes the following Nationwide Class, as well as the following California Subclass definitions (also collectively referred to herein as the "Class"), subject to amendment as appropriate:

> **Nationwide Class**
>
> All individuals in the United States who had Private Information accessed and/or acquired as a result of the Data Breach, including all who were sent a notice of the Data Breach on or about September 4, 2024.
>
> **California Subclass**
>
> All individuals residing in California whose Private Information was accessed and/or acquired as a result of the Date Breach, including all who were sent a notice of the Data Breach on or about September 4, 2024.

112. Excluded from the Class are Avis and its parents or subsidiaries, any entities in which it has a controlling interest, as well as its officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns. Also

excluded is any Judge to whom this case is assigned, as well as their judicial staff and immediate family members.

113. Plaintiff reserves the right to modify or amend the definitions of the proposed Class before the Court determines whether certification is appropriate.

114. The proposed Class meets the criteria for certification under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).

115. Numerosity. The Class Members are so numerous that the joinder of all members is impracticable. Though the exact number and identities of Class Members are unknown at this time, based on information and belief, the Class consists of 299,006 customers of Avis whose data was compromised in the Data Breach. The identities of Class Members are ascertainable through Avis's records, Class Members' records, publication notice, self-identification, and other means.

116. Commonality. There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a. Whether Avis engaged in the conduct alleged herein;

b. When Avis learned of the Data Breach;

c. Whether Avis's response to the Data Breach was adequate;

d. Whether Avis unlawfully lost or disclosed Plaintiff's and Class Members' Private Information;

e. Whether Avis failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the Private Information compromised in the Data Breach;

f. Whether Avis's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

g. Whether Avis's data security systems prior to and during the Data Breach were consistent with industry standards;

h. Whether Avis owed a duty to Class Members to safeguard their Private Information;

i. Whether Avis breached its duty to Class Members to safeguard their Private Information;

j. Whether hackers obtained Class Members' Private Information via the Data Breach;

k. Whether Avis had a legal duty to provide timely and accurate notice of the Data Breach to Plaintiffs and the Class Members;

l. Whether Avis breached its duty to provide timely and accurate notice of the Data Breach to Plaintiffs and Class Members;

m. Whether Avis knew or should have known that its data security systems and monitoring processes were deficient;

n. What damages Plaintiffs and Class Members suffered as a result of Avis's misconduct;

o. Whether Avis's conduct was negligent;

p. Whether Avis's conduct was *per se* negligent;

q. Whether Avis was unjustly enriched;

r. Whether Plaintiffs and Class Members are entitled to actual and/or statutory damages;

s. Whether Plaintiffs and Class Members are entitled to additional credit or identity monitoring and monetary relief; and

t. Whether Plaintiffs and Class Members are entitled to equitable relief, including injunctive relief, restitution, disgorgement, and/or the establishment of a constructive trust.

117. Typicality. Plaintiffs' claims are typical of those of other Class Members because Plaintiffs' Private Information, like that of every other Class Member, was compromised in the Data Breach.

118. Adequacy of Representation. Plaintiffs will fairly and adequately represent and protect the interests of Class Members. Plaintiffs' counsel is competent

and experienced in litigating class actions, including data privacy litigation of this kind.

119. Predominance. Avis has engaged in a common course of conduct toward Plaintiffs and Class Members in that all of Plaintiffs' and Class Members' data was stored on the same computer systems and unlawfully accessed and exfiltrated in the same way. The common issues arising from Avis's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of the judicial economy.

120. Superiority. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a Class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would, therefore, have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Avis. In contrast, conducting this action as a

class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

121. Class certification is also appropriate under Federal Rules of Civil Procedure, rule 23(b)(2). Avis has acted and/or refused to act on grounds generally applicable to the Class such that final injunctive relief and/or corresponding declaratory relief is appropriate as to the Class as a whole.

122. Finally, all members of the proposed Class are readily ascertainable. Avis has access to the names and addresses and/or email addresses of Class Members affected by the Data Breach. Class Members have already been preliminarily identified and sent notice of the Data Breach by Avis.

## VI. CLAIMS FOR RELIEF

### COUNT I
### NEGLIGENCE
### (On behalf of Plaintiff and the Class)

123. Plaintiff restates and realleges all of the allegations stated in paragraphs 1-122 as if fully set forth herein.

124. Avis knowingly collected, came into possession of, and maintained Plaintiff's and Class Members' Private Information, and had a duty to exercise reasonable care in safeguarding, securing, and protecting such Information from being disclosed, compromised, lost, stolen, and misused by unauthorized parties.

125. Avis knew or should have known of the risks inherent in collecting the Private Information of Plaintiff and Class Members and the importance of adequate security. Avis was on notice because, on information and belief, it knew or should have known that it would be an attractive target for cyberattacks.

126. Avis owed a duty of care to Plaintiff and Class Members whose Private Information was entrusted to it. Avis's duties included, but were not limited to, the following:

a. To exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting Private Information in its possession;

b. To protect customers' Private Information using reasonable and adequate security procedures and systems compliant with industry standards;

c. To have procedures in place to prevent the loss or unauthorized dissemination of Private Information in its possession;

d. To employ reasonable security measures and otherwise protect the Private Information of Plaintiffs and Class Members pursuant to the FTCA and California and Florida consumer protection laws;

e. To implement processes to quickly detect a data breach and to timely act on warnings about data breaches; and

f. To promptly notify Plaintiffs and Class Members of the Data Breach, and to precisely disclose the type(s) of information compromised.

127. Avis's duty to employ reasonable data security measures arose, in part, under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

128. Defendants' duty also arose because Defendants were bound by industry standards to protect their customers' confidential Private Information.

129. Plaintiff and Class Members were foreseeable victims of any inadequate security practices on the part of Defendants, and Avis owed them a duty of care to not subject them to an unreasonable risk of harm.

130. Avis, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and Class Members by failing to exercise reasonable care in protecting and safeguarding Plaintiffs' and Class Members' Private Information within Avis's possession.

131. Avis, by its actions and/or omissions, breached its duty of care by failing to provide, or acting with reckless disregard for, fair, reasonable, or adequate

computer systems and data security practices to safeguard the Private Information of Plaintiff and Class Members.

132. Avis, by its actions and/or omissions, breached its duty of care by failing to promptly identify the Data Breach and then failing to provide prompt notice of the Data Breach to the persons whose Private Information was compromised.

133. Avis breached its duties, and thus, was negligent, by failing to use reasonable measures to protect Class Members' Private Information. The specific negligent acts and omissions committed by Defendants include, but are not limited to, the following:

a. Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information;
b. Failing to adequately monitor the security of its networks and systems;
c. Failing to periodically ensure that its email system maintained reasonable data security safeguards;
d. Allowing unauthorized access to Class Members' Private Information;
e. Failing to comply with the FTCA;

134. Avis had a special relationship with Plaintiffs and Class Members. Plaintiffs' and Class Members' willingness to entrust Avis with their Private Information was predicated on the understanding that Avis would take adequate

security precautions. Moreover, only Avis had the ability to protect its systems (and the Private Information that it stored on them) from attack.

135. Avis's breach of duties owed to Plaintiffs and Class Members caused Plaintiffs' and Class Members' Private Information to be compromised and exfiltrated as alleged herein.

136. Avis's breaches of duty also caused a substantial, imminent risk to Plaintiffs and Class Members of identity theft, loss of control over their Private Information, and/or loss of time and money to monitor their accounts for fraud.

137. As a result of Avis's negligence in breach of its duties owed to Plaintiffs and Class Members, Plaintiffs and Class Members are in danger of imminent harm in that their Private Information, which is still in the possession of third parties, will be used for fraudulent purposes.

138. Avis also had independent duties under state laws that required it to reasonably safeguard Plaintiffs' and Class Members' Private Information and promptly notify them about the Data Breach.

139. As a direct and proximate result of Avis's negligent conduct, Plaintiffs and Class Members have suffered damages as alleged herein and are at imminent risk of further harm.

140. The injury and harm that Plaintiffs and Class Members suffered were reasonably foreseeable.

141. Plaintiffs and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

142. In addition to monetary relief, Plaintiffs and Class Members are also entitled to injunctive relief requiring Avis to, *inter alia*, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiffs and Class Members.

**COUNT II**
**NEGLIGENCE *PER SE***
**(On behalf of Plaintiff and the Class)**

143. Plaintiff restates and realleges all of the allegations stated in paragraphs 1-122 as if fully set forth herein.

144. Pursuant to Section 5 of the FTCA, Avis had a duty to provide fair and adequate computer systems and data security to safeguard the Private Information of Plaintiffs and Class Members.

145. Avis breached its duties by failing to employ industry-standard cybersecurity measures in order to comply with the FTCA, including but not limited to proper segregation, access controls, password protection, encryption, intrusion detection, secure destruction of unnecessary data, and penetration testing.

146. Plaintiffs and Class Members are within the class of persons that the FTCA is intended to protect.

147. The FTCA prohibits “unfair . . . practices in or affecting commerce,” including, as interpreted and enforced by the FTC, the unfair act or practice of failing to use reasonable measures to protect PII (such as the Private Information compromised in the Data Breach). The FTC rulings and publications described above, together with the industry-standard cybersecurity measures set forth herein, form part of the basis of Avis’s duty in this regard.

148. Avis violated the FTCA by failing to use reasonable measures to protect the Private Information of Plaintiffs and the Class and by not complying with applicable industry standards, as described herein.

149. It was reasonably foreseeable, particularly given the growing number of data breaches of Private Information, that the failure to reasonably protect and secure Plaintiffs’ and Class Members’ Private Information in compliance with applicable laws would result in an unauthorized third-party gaining access to Avis’s networks, databases, and computers that stored Plaintiffs’ and Class Members’ unencrypted Private Information.

150. Avis’s violations of the FTCA constitute negligence *per se*.

151. Plaintiffs’ and Class Members’ Private Information constitutes personal property that was stolen due to Avis’s negligence, resulting in harm, injury, and damages to Plaintiffs and Class Members.

152. As a direct and proximate result of Avis's negligence *per se*, Plaintiffs and the Class have suffered, and continue to suffer, injuries and damages arising from the unauthorized access of their Private Information, including but not limited to damages from the lost time and effort to mitigate the actual and potential impact of the Data Breach on their lives.

153. Avis breached its duties to Plaintiffs and the Class under the FTCA by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiffs' and Class Members' Private Information.

154. As a direct and proximate result of Avis's negligent conduct, Plaintiffs and Class Members have suffered injury and are entitled to compensatory and consequential damages in an amount to be proven at trial.

155. In addition to monetary relief, Plaintiffs and Class Members are also entitled to injunctive relief requiring Avis to, *inter alia*, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiffs and Class Members.

## COUNT III
## BREACH OF CONTRACT
## (On behalf of Plaintiff and the Class)

156. Plaintiff restates and realleges all of the allegations stated in paragraphs 1-122 as if fully set forth herein.

157. Plaintiff and Class Members entered into a valid and enforceable contract through which they paid money to Avis in exchange for services. That contract included promises by Defendants to secure, safeguard, and not disclose Plaintiffs' and Class Members' Private Information.

158. Avis's Privacy Policy memorialized the rights and obligations of Avis and its customers. This document was provided to Plaintiffs and Class Members in a manner in which it became part of the agreement for services.

159. In its Notice Letter and Privacy Policy, Avis commits to protecting the privacy and security of its customers' private information.

160. Plaintiffs and Class Members fully performed their obligations under their contracts with Avis.

161. However, Avis did not secure, safeguard, and/or keep private Plaintiffs' and Class Members' Private Information, and therefore Avis breached its contracts with Plaintiffs and Class Members.

162. Avis allowed third parties to access, copy, and/or exfiltrate Plaintiffs' and Class Members' Private Information without permission. Therefore, Avis breached the Privacy Policy with Plaintiffs and Class Members.

163. Avis's failure to satisfy its confidentiality and privacy obligations resulted in Avis providing services to Plaintiffs and Class Members that were of diminished value.

164. As a result, Plaintiffs and Class Members have been harmed, damaged, and/or injured as described herein, including in Avis's failure to fully perform its part of the bargain with Plaintiffs and Class Members.

165. As a direct and proximate result of Avis's conduct, Plaintiffs and Class Members suffered and will continue to suffer damages in an amount to be proven at trial.

166. In addition to monetary relief, Plaintiffs and Class Members are also entitled to injunctive relief requiring Avis to, *inter alia*, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiffs and Class Members.

## COUNT IV
## BREACH OF IMPLIED CONTRACT
## (On behalf of Plaintiff and the Class)

167. Plaintiff restates and realleges all of the allegations stated in paragraphs 1-122 as if fully set forth herein.

168. This Count is pleaded in the alternative to Count III above.

169. Avis provides rental car services to Plaintiffs and Class Members. Plaintiffs and Class Members formed an implied contract with Defendants regarding the provision of those services through their collective conduct, including by Plaintiffs and Class Members paying for services from Defendants.

170. Through Avis's sale of services, it knew or should have known that it must protect Plaintiffs' and Class Members' confidential Private Information in accordance with Avis's policies, practices, and applicable law.

171. As consideration, Plaintiffs and Class Members paid money to Avis and turned over valuable Private Information to Avis. Accordingly, Plaintiffs and Class Members bargained with Avis to securely maintain and store their Private Information.

172. Avis accepted possession of Plaintiffs' and Class Members' Private Information for the purpose of providing services to Plaintiffs and Class Members.

173. In delivering their Private Information to Avis and paying for services, Plaintiffs and Class Members intended and understood that Avis would adequately safeguard the Private Information as part of that service.

174. Defendants' implied promises to Plaintiff and Class Members include, but are not limited to: (1) taking steps to ensure that anyone who is granted access to Private Information also protects the confidentiality of that data; (2) taking steps to ensure that the Private Information that is placed in the control of its employees is restricted and limited to achieve an authorized business purpose; (3) restricting access to qualified and trained employees and/or agents; (4) designing and implementing appropriate retention policies to protect the Private Information against criminal data breaches; (5) applying or requiring proper encryption; (6)

implementing multifactor authentication for access; and (7) taking other steps to protect against foreseeable data breaches.

175. Plaintiff and Class Members would not have entrusted their Private Information to Avis in the absence of such an implied contract.

176. Had Avis disclosed to Plaintiff and the Class that they did not have adequate computer systems and security practices to secure sensitive data, Plaintiff and Class Members would not have provided their Private Information to Avis.

177. Avis recognized that Plaintiff's and Class Members' Private Information is highly sensitive and must be protected, and that this protection was of material importance as part of the bargain to Plaintiff and the other Class Members.

178. Avis violated these implied contracts by failing to employ reasonable and adequate security measures to secure Plaintiff's and Class Members' Private Information.

179. Plaintiff and Class Members have been damaged by Avis's conduct, including the harms and injuries arising from the Data Breach now and in the future, as alleged herein.

**COUNT V**
**UNJUST ENRICHMENT**
**(On behalf of Plaintiff and the Nationwide Class)**

180. Plaintiff restates and realleges all of the allegations stated in paragraphs 1-122 as if fully set forth herein.

181. This Count is pleaded in the alternative to Counts III and IV above.

182. Plaintiff and Class Members conferred a benefit on Defendants by turning over their Private Information to Defendants and by paying for services that should have included cybersecurity protection to protect their Private Information. Plaintiff and Class Members did not receive such protection.

183. Upon information and belief, Avis funds its data security measures entirely from its general revenue, including from payments made to it by Plaintiff and Class Members.

184. As such, a portion of the payments made by Plaintiff and Class Members is to be used to provide a reasonable and adequate level of data security that is in compliance with applicable state and federal regulations and industry standards, and the amount of the portion of each payment made that is allocated to data security is known to Avis.

185. Avis has retained the benefits of its unlawful conduct, including the amounts of payment received from Plaintiff and Class Members that should have been used for adequate cybersecurity practices that it failed to provide.

186. Avis knew that Plaintiff and Class Members conferred a benefit upon it, which Avis accepted. Avis profited from these transactions and used the Private Information of Plaintiff and Class Members for business purposes, while failing to use the payments it received for adequate data security measures that would have secured Plaintiff's and Class Members' Private Information and prevented the Data Breach.

187. If Plaintiff and Class Members had known that Defendants had not adequately secured their Private Information, they would not have agreed to provide such Private Information to Defendants.

188. Due to Avis's conduct alleged herein, it would be unjust and inequitable under the circumstances for Avis to be permitted to retain the benefit of its wrongful conduct.

189. As a direct and proximate result of Avis's conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) the loss of the opportunity to control how their Private Information is used; (ii) the compromise, publication, and/or theft of their Private Information; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their Private Information; (iv) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data

Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (v) the continued risk to their Private Information, which remains in Avis's possession and is subject to further unauthorized disclosures so long as Avis fails to undertake appropriate and adequate measures to protect Private Information in its continued possession; and (vi) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

190. Plaintiff and Class Members are entitled to full refunds, restitution, and/or damages from Avis and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Avis from its wrongful conduct. This can be accomplished by establishing a constructive trust from which the Plaintiff and Class Members may seek restitution or compensation.

191. Plaintiff and Class Members may not have an adequate remedy at law against Avis, and accordingly, they plead this claim for unjust enrichment in addition to, or in the alternative to, other claims pleaded herein.

**COUNT VI**
**VIOLATION OF THE CALIFORNIA CONSUMER PRIVACY ACT,**
**CAL. CIV. CODE § 1798.100, *et seq.***

**(On behalf of Plaintiff and the California Subclass)**

192. Plaintiff restates and realleges all of the allegations stated in paragraphs 1-122 as if fully set forth herein.

193. Defendants violated section 1798.150(a) of the California Consumer Privacy Act ("CCPA") by failing to prevent Plaintiff Lopez's and California Subclass members' nonencrypted and nonredacted PII from unauthorized access and exfiltration, theft, or disclosure as a result of Defendants' violations of their duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the PII of Plaintiff Lopez and California Subclass members.

194. As a direct and proximate result of Defendants' acts, Plaintiff Lopez's and the California Subclass members' PII was subjected to unauthorized access and exfiltration, theft, or disclosure through Defendants' computer systems and/or from the dark web, where hackers further disclosed Defendants' customers' PII.

195. As a direct and proximate result of Defendants' acts, Plaintiff Lopez and the California Subclass members were injured and lost money or property, including but not limited to the price received by Defendants for the services, the loss of California Subclass members' legally protected interest in the confidentiality and privacy of their PII, nominal damages, and additional losses as described above.

196. Defendants knew or should have known that their computer systems and data security practices were inadequate to safeguard California Subclass members' PII and that the risk of a data breach or theft was highly likely. Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information of Plaintiff Lopez and the California Subclass members.

197. Defendant Avis Rent A Car System, LLC, is a subsidiary of Avis Budget Group, Inc. Avis employs more than 24,500 people and generates approximately $12 billion in annual revenue. It collects consumers' PII as defined in California Civil Code § 1798.140.

198. At this time, Plaintiff Lopez and California Subclass members seek only injunctive and declaratory relief.

199. Concurrently with the filing of this complaint, Plaintiff Lopez provided written notice to Defendants identifying the specific provisions of this title he alleges they have violated. Assuming Defendants do not cure the Data Breach within 30 days, and Plaintiff Lopez believes any such cure is not possible under these facts and circumstances, Plaintiff Lopez intends to amend this complaint to also seek the greater of statutory damages in an amount not less than one hundred dollars ($100) and not greater than seven hundred and fifty ($750) per consumer per incident or actual damages, whichever is greater. *See* CAL. CIV. CODE § 1798.150(b).

## COUNT VII
## DECLARATORY JUDGMENT
## (On behalf of Plaintiff and the Class)

200. Plaintiff restates and realleges all of the allegations stated in paragraphs 1-122 as if fully set forth herein.

201. Under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. Furthermore, the Court has broad authority to restrain acts that are tortious and violate the terms of the federal and state statutes described in this Complaint.

202. Avis owes a duty of care to Plaintiff and Class Members, which required it to adequately secure Plaintiff's and Class Members' Private Information.

203. Avis still possesses the Private Information of Plaintiff and Class Members.

204. Plaintiff alleges that Avis's data security measures remain inadequate. Furthermore, Plaintiff continue to suffer injury as a result of the compromise of their Private Information, and the risk remains that further compromises of their Private Information will occur in the future.

205. Under its authority pursuant to the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a. Avis owes a legal duty to secure its customers' Private Information and to timely notify customers of a data breach under the common law and Section 5 of the FTCA;

b. Avis's existing security measures do not comply with its explicit or implicit contractual obligations and duties of care to provide reasonable security procedures and practices that are appropriate to protect customers' Private Information; and

c. Avis continues to breach this legal duty by failing to employ reasonable measures to secure customers' Private Information.

206. This Court should also issue corresponding prospective injunctive relief requiring Avis to employ adequate security protocols consistent with legal and industry standards to protect customers' Private Information, including the following:

a. Order Avis to provide lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members.

b. Order that, to comply with Defendants' explicit or implicit contractual obligations and duties of care, Avis must implement and maintain reasonable security measures, including, but not limited to:

i. engaging third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including

simulated attacks, penetration tests, and audits on Avis's systems on a periodic basis, and ordering Avis to promptly correct any problems or issues detected by such third-party security auditors;

ii. engaging third-party security auditors and internal personnel to run automated security monitoring;

iii. auditing, testing, and training its security personnel regarding any new or modified procedures;

iv. segmenting its user applications by, among other things, creating firewalls and access controls so that if one area is compromised, hackers cannot gain access to other portions of Avis's systems;

v. conducting regular database scanning and security checks;

vi. routinely and continually conducting internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

vii. meaningfully educating its users about the threats they face with regard to the security of their Private Information, as well as the steps Avis's customers should take to protect themselves.

207. If an injunction is not issued, Plaintiff will suffer irreparable injury and will lack an adequate legal remedy to prevent another data breach at Avis. The risk

of another such breach is real, immediate, and substantial. If another breach at Avis occurs, Plaintiff will not have an adequate remedy at law because many of the resulting injuries are not readily quantifiable.

208. The hardship to Plaintiff, if an injunction is not issued, exceeds the hardship to Avis if an injunction is issued. Plaintiff will likely be subjected to substantial, continued identity theft and other related damages if an injunction is not issued. On the other hand, the cost of Avis's compliance with an injunction requiring reasonable prospective data security measures is relatively minimal, and Avis has a pre-existing legal obligation to employ such measures.

209. Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing a subsequent data breach at Avis, thus preventing future injury to Plaintiff and other customers whose Private Information would be further compromised.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Classes described above, seek the following relief:

a. An order certifying this action as a Class action under Fed. R. Civ. P. 23, defining the Class as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiff are proper representatives of the Nationwide Class, and the State Subclasses requested herein;

b. Judgment in favor of Plaintiff and Class Members awarding them appropriate monetary relief, including actual damages, statutory damages, equitable relief, restitution, disgorgement, and statutory costs;

c. An order providing injunctive and other equitable relief as necessary to protect the interests of the Class as requested herein;

d. An order instructing Avis to purchase or provide funds for lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members;

e. An order requiring Avis to pay the costs involved in notifying Class Members about the judgment and administering the claims process;

f. A judgment in favor of Plaintiff and Class Members awarding them prejudgment and post-judgment interest, reasonable attorneys' fees, costs, and expenses as allowable by law; and

g. An award of such other and further relief as this Court may deem just and proper.

## VIII. DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all triable issues.

DATED: November 4, 2024 Respectfully submitted,

*/s/ Mark C. Rifkin*
MARK C. RIFKIN

MARK C. RIFKIN
**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
270 Madison Avenue
New York, New York 10016
Telephone: 212/545-4600
Facsimile: 212/545-4677
rifkin@whafh.com

RACHELE R. BYRD
*pro hac vice forthcoming*
STEPHANIE AVILES
*pro hac vice forthcoming*
**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, California
Telephone: (619) 239-4599
Facsimile: (619) 234-4599
byrd@whafh.com
saviles@whafh.com

JON TOSTRUD
*pro hac vice forthcoming*
ANTHONY CARTER
*pro hac vice forthcoming*
**TOSTRUD LAW GROUP, PC**
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: 310/278-2600
Facsimile: 310/278-2640
jtostrud@tostrudlaw.com
acarter@tostrudlaw.com

*Attorneys for Plaintiff*